Robinson, J.
The questions in this cause propounded by the various parties hereto are:
I. Did Franklin Alter die intestate as to that part of his estate which he directed his trustees to ; pay to Henry T. Alter and his heirs at the expiration of ten years. after the decease of testator, Henry T. Alter having died without issue prior to the death of the testator?
*199 II. Did the estate bequeathed to the trustees in' trust for the children of Franklin Alter vest in the children at .the death of Franklin Alter?
III. Has the court the power to increase the annual allowance made by the testator to each of his children, because of the fact that the circumstances of certain of such children and general conditions have changed since the death of testator ?
IV. Are the trustees exceeding their power by the contemplated sale of the stock of the estate in The American Tool Works Company of Ohio?
In view of the conclusion we have reached in considering question No. II, a discussion of question Number I becomes unnecessary, other than to state that the interest of the children, who survived the testator, in the undivided one-eighth part devised and bequeathed to Henry T. Alter, and his heirs, is not different from their interest in the entire estate.
Coming now to a consideration of question No. II, from a reading of thp will it seems apparent that the testator intended to secure to each of his children an annual income for the ten years immediately following his decease, and that such income should not be by them in any way anticipated or alienated; hence the provision “My Trustees shall accept no order on said annual payments from any of my said children, nor shall said annual payments or any part thereof be in any way pledged or hy-pothecated by any of my said children.”
What impelled the testator to make provision for the annual income and to set it about with restrictions as to anticipation and alienation, we need not *200 inquire. It is sufficient that we are able to gather from the plain provisions of the will such intention.
Having thus demonstrated his purpose to prevent the alienation and anticipation of the annual income, and having recognized the advisability of so restricting the enjoyment of this annual income, it is significant that with reference to the principal and the larger bequest, he made no such provision or restriction. It is also significant that with reference to the annual income he provided “In the event of the death of any particular child of mine before or after my death, leaving issue, my Trustees shall pay annually to its issue, share and share alike, but per stirpes, the same amount or portion of the net income of my estate as its parent would have received if living,” fand further provided “In the event of the death of any child * * * leaving no issue * * * the income which would have been or which was theretofore payable to such child * * * shall go in augmentation and become a part of the principal of my estate.” But when he came to the distribution of the principal of the trust estate he disposed of it one-eighth part thereof to- each of his children, by name, “and 'his heirs.” Having with reference to the annual income clearly manifested an intention that such incomes should go to his children and their respective issue, as distinguished from their heirs, and in the absence of issue that it be suspended from its course of descent and be applied towards the augmentation of the prin-' cipal, thus demonstrating that he understood the distinction between issue and heir, he to our minds conclusively indicated that when he used the words- *201 “and his heirs” or the words “and her heirs” he used them in their technical sense. From which we are forced to the conclusion that in the use of the words “one-eighth part thereof to my son, Franklin Alter, and his heirs,” and similar words as to the other children, the testator did not by the use of the words “and his heirs” intend to indicate a new class of persons, but rather intended to indicate a bequest to Franklin Alter, absolute, subject only to the trust, and that therefore the children of the testator who survived him took a vested estate in the entire trust estate, subject to the provisions of the trust as to annuity, control and possession.
We come now to the consideration of question Number III, which, it may be said in passing, is the question that influenced this court to accept jurisdiction of this cause.
While it is not controlling in the determination of the legal question here involved, it seems appropriate to refer to the facts that testator lived some seven years after the execution of his last will and testament; that his income had increased prior to his death, and especially so for the year immediately prior thereto; that George T. Alter, long prior to the death of testator, had developed the disease from which he is now suffering, and that the testator had advanced to him some $35,000 more than he had advanced to any other of the children, which would indicate that he had knowledge of his financial needs and probably of his. earning capacity ; and that notwithstanding such knowledge he required that out of the first annuity of $2,500 to George $2,000 should be retained as part payment *202 upon such advancement. It also seems appropriate to refer to the facts that the son Franklin Alter had married prior to the death of the testator, had two children, and at that time was not earning to exceed $1,500 per year; that for the seven years between the execution of the will and his decease, notwithstanding the changing circumstances of his children and the increase of his estate, the testator did not see fit to revise his bequest to any of them.
Assuming, as we are bound to assume, that the will speaks from the date of the death of the testator, rather than from the date of the execution of the will, the circumstances of these two legatees,_ then and now, the conditions under which they lived then and live now, are not greatly different; perhaps not more' different than are the circumstances and conditions of a considerable proportion of legatees in general, whose right of possession and control is deferred.
If the courts are to enter the field of distributing estates in such manner as will in their judgment accomplish the most beneficial results to the legatees, and are to distribute the bounties of the testator according to the needs of the beneficiary arid the sense of equity and justice of the court, rather than according to the intention of the testator, to what purpose is the right conferred by statute upon every person of full ag6, sound mind and memory, and not under restraint, to give, and bequeath his property by last will and testament ?
A testator when he comes to distribute his bounty by. last, will and testament takes into consideration his affection for and obligation to the beneficiary, *203 the beneficiary’s needs, ability, capacity, and many other things of which he has peculiar knowledge, and it is because of such consideration that he makes a last will and testament at all.
Is a court, a stranger to the controlling motive of the testator, to assume to amend the will, because in its opinion some other disposition would have been more beneficial to the legatee ? Where no last will and testament is executed, the law casts the estate upon the heirs and distributees without reference to their circumstances or needs, and without reference to the affection or obligation of the ancestor, and no court is permitted to divert the course of the estate’s descent. -
The right to pass property by will having been conferred by statute, and the right to inherit intestate property having been conferred by statute, what argument can be advanced in favor of thwarting the will of the testator in favor of the needy legatee that cannot with equal force be urged with reference to the needy heir under the laws of descent and distribution?
In extreme cases, in England, as well as in certain jurisdictions in America, the courts, under the guise of doing, what the court imagines the testator would have done had. he foreseen the situation, have gone a long way toward the substitution of the will of the court for that of the testator; but no such invasion .of the right of the testator has been made in Ohio and we are not convinced that the benefits to be derived from the assumption and exercise of such power by the courts would compen *204 sate for the evils which would necessarily flow in. its wake.
The remaining question for determination is as to the power of the trustees to sell the stock of the estate in The American Tool Works Company.
The testator directed “that my Trustees shall sell and dispose of my stock in The American Tool Works Company of Cincinnati, Ohio, within one year after my death, unless my Trustees shall unanimously agree that it would be for the best interest of my estate to hold said stock and continue my interest in said The American Tool Works Company, for a period of three years after my death, then in that event, I direct that said stock be sold and disposed of at the end of the last mentioned period; when said stock is so solid the proceeds derived therefrom' shall be reinvested by my Trustees as part of the principal of my estate.”
The agreed statement of facts states that “The stock in the American Tool Works Company, referred to in said will, was the stock issued- by The American Tool Works Company, a corporation organized and doing business under the laws of the State of West Virginia, * * * that * * * about October 29th, 1918, a corporation was organized under the laws of the State of Ohio and immediately after organization of said corporation * * * The American Tool Works Company * * * of the State of West Virginia * * * did execute a deed, bill of sale, and other written instruments, transferring, selling, assigning, and conveying to The American Tool Works Company, *205 a corporation under the laws of Ohio, the entire plant, assets and property, real, personal and mixed, * * * belonging to the said The American Tool Works Company of West Virginia, the consideration therefor being the payment to Edgar Stark * * * of the sum of Thirty Thousand ($30,000) Dollars, in cash, The American Tool Works Company, a corporation under the laws of the State of Ohio, assuming and agreeing to pay as and when the same became due any and all lawful claims and indebtedness of , said The American Tool Works Company, of West Virginia, and the issuing and delivering to- him of one or more valid and paid up stock certificates in such name and number of shares as the said Stark directed, representing in the aggregate the'sum of two hundred and sixty-five thousand ($265,000) dollars, par value of the capital stock of The American Tool Works Company, a corporation under the laws of the State of Ohio; that by said sale the trustees of the estate of deceased * * * had issued to them shares of stock in The American Tool Works Company, a corporation under the laws of the State of Ohio, and still hold the same.” This transaction, stripped of its formality, amounted to a mere change of the company from a West Virginia corporation to an Ohio corporation, the Ohio corporation having the same assets which were theretofore held by the West Virginia corporation, and the trustees having the stpck in the Ohio corporation in place of the stock of the West Virginia corporation, which presumably is a dissolved and now extinct corporation.
*206 It is claimed that this transaction amounted to a sale in compliance with the direction of the will.
However, assuming this to have been a sale and reinvestment in the stock of the Ohio corporation, we are unable to agree with this contention, for the reason, if for no other, that it was not authorized by the’ will, which directs the trustees to reinvest “in the stock of any National Bank in any State of the United States, but not more than Ten Thousand Dollars ($10,000) par value in the stock of any one such bank; in first mortgage on unincumbered real estate in any State of the United States, provided, that the amount loaned be not more than sixty per cent, of the market value of the real estate together with valid insurance on the improvements, if any; in bonds of the United States Government and in approved state, county, township or municipal bonds; in the purchase of real estate or in what are known as ground rents in any city of the United States having a population of over fifty thousand inhabitants, or in and upon any securities in which said The Union Savings Bank and Trust Company is authorized to invest trust funds by law.”
Clearly the reinvestment, if this transaction be treated as. a sale and reinvestment, was not a reinvestment in any of the securities contemplated in the above authorization of the trustees in that respect. /
Nor are we of opinion that the failure of the trustees to sell the stock within the period directed by the will exhausted their power with reference thereto, or that their failure to make such sale *207 within the time directed would be any defense to an action now brought tb require them to make such sale, but are of opinion, since the equitable estate of the children of Franklin Alter in the residue of the estate devised to the trustees vested upon the death of the testator, subject to the provisions of the trust, that the consent of such children to the reorganization or their consent to the' retention of the stock by the trustees would operate as an estoppel against any cause of action which they might have had by reason of the failure of the trustees to make such sale.
The testator having vested the trustees with the broad power and discretion “to sell and convey any of the property, real, personal or mixed, which may be the subject of this trust within said period of ten years from the date of my death,” this court, in the absence of a showing of fraud, collusion or bad faith, will not substitute its judgment for the judgment of the trustees selected by the testator, and will not in the absence of proof of fraud, collusion or bad faith enjoin the exercise of the power so invested in the trustees by the testator.
The judgment of the court of appeals in Case No. 16835 is reversed in so far as it requires the trustees to pay to any of the children of the testator an annuity in excess of $2,500, and the judgment of the court of appeals in Case No. 16836 is affirmed.

Judgment reversed in Cause No. 16835.

Judgment affirmed in Cause No. 16836.

*208 Hough, Wanamaker, Jones and Matthias, JJ., concur.